Proceed. Good afternoon. My name is Mark Kaplan. Sorry for the frog in my throat, but I represent MD Mall and You want to pull the microphone down just a little bit. Wow. Is that better? Thank you. CSX, the railroad company, has a single railroad track. Are you reserving rebuttal time? Thank you. Yes, I would like to reserve three minutes. CSX has this single railroad track that runs along the southern or the back of my clients shopping mall. A berm with trees and shrubs is located between the two properties, really straddles the property. Homes on the opposite side are way above and those homes demonstrate that when the railroad was originally installed, probably a hundred years ago, the railroad or its predecessor changed the grade of the property and changed the course of the water from north to south to west to east. I'm sorry. Why did we stop talking? I understood the argument in the district court to be this change in runoff and the invasion of your client's property occurred because when ties were replaced and ballast was put on the track and a lot of heavy equipment was brought in there a few years ago, something CSX did resulted in the change in the runoff. That was what I understood the pitch to be in the district court. In this court, you've started to talk about well, this was something that happened when CSX's predecessor a century ago laid track. So I'm a little puzzled by it, and I'm wondering if you can explain it. Yeah, I think I can. We were, quite frankly, we were rather surprised when we filed the original action and we went to the first encounter with Judge Sanchez. And Judge Sanchez's mother nature. This is mother nature, and this is just water running from the higher level to the lower level. We had a great deal of difficulty and probably were unsuccessful, at least into oral argument, convincing Judge Sanchez that the railroad even owed a duty to us. He thought this was just water coming down a hill. I'm wondering why you moved from relying on an expert that you said this is a consequence of their changing the track when they were up there working on it, to this is something that happened a century ago. I'm sorry, but that's not what we said. We brought an expert in, but what we said initially, and if I could, I'm sorry. Mr. Keppel, haven't you changed your theory here? Your theory before the district court? I think that's what, and maybe that's what we're getting at, that you were really assuming preemption or that the federal standard applied before the district court, but now you're urging that it doesn't. That's not accurate, Your Honor. I did not do that. We came in initially and we sued to have the railroad abate a nuisance. But the water coming onto our property. We pled Pennsylvania law that when you change property, when you change the grade of property, you're responsible to make sure that water doesn't come on our property. But let's get down to the basic. Why is this not preempted under the federal law under 49 CFR 213.33 which says each drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained, kept free of obstruction to accommodate expected water flow for the area concerned. Does that not specifically preempt and cover exactly what happened here? Absolutely not. Your Honor, I handed up. We have those in the appendix. They are in the appendix. This is very, very similar in my view on the preemption to your Strozek case and to a number of other cases. If you look at the picture and if you read the record as we quoted in our reply brief, CSX said all that regulation applied to is keeping the water off of the tracks. The tracks are over here. I don't know how many feet, 10, 20 feet. And then you have. Well, it's a question of what adjacent means. But if the idea is to keep things, you know, free of obstruction and accommodate water flow. Well. Is it all about what adjacent means? Well, I'm not sure, Your Honor, because here's where you say that I changed my theory. I said that there was no preemption. Judge Sanchez said the same thing that you're saying. And then I said, okay, well, then let's look at that regulation. And it says that you're supposed to keep the water facilities are supposed to take care of. Let me see if I can. I have the exact language. Each drainage or other water carrying facility under or immediately adjacent to the roadbed shall be maintained and kept free of obstruction to accommodate expected water flow for the area concerned. And isn't that what they failed to do? Not according to them. According to them, all they had to do was to. Well, according to the railroad, all they had to do was keep the water off the tracks. Latchford, the roadmaster who was responsible for this 100 miles of road said, I don't have to worry about the water going onto your property. He specifically. But it sounds like somewhere along the way, you know, they did. They were trying to build this. This one area that I forget what you call the spillway or whatever. Judge, they weren't trying to build them. If you if you would look at. Why is there no preemption? Why is there no preemption here of the claims regarding their responsibility and liability for water flowing from this area? It's this area. It's the roadbed. It's that they're rated. The regulations regulate the ballast and the rail lines and they don't. The plane line, which is what immediate adjacent to the roadbed. This is a very small. I mean, the picture is a very small area. Presumably they did not regulate that. And that's why it's flowing down to that drainage. OK. So you asked me and Judge Jordan, you asked me, how did I get from one defense from one part to the other, from one theory to the other? I had this kind of debate with Judge Sanchez. And I said, OK, if you say that the regulations preempt this area, they subsume all of the regulations and they supplant. And here's the important part. They supplant the Pennsylvania property law that says that one property owner can't throw water on another. Then you have to, then our second position was, OK, then they violated their own regulations. They violated their own rules and they didn't take care of the water in this area. OK. But what are you saying here today? Same thing. But under preemption, the fact that they. They're not preempted, Your Honor. But where's your claim? Is it for violation? I think this is where the confusion is. Are you saying that they violated the regulations? Or are you saying that they're liable to your client in negligence and trespass? I am saying in the first instance that they are liable to my client in negligence and continuing trespass. And then when the defense of preemption, which I do not think applies. OK. And we've cited all the cases where it doesn't apply. OK. You don't think it applies. But if I'm before a judge to go on trial and he says. Now you're in front of three judges. OK. I mean, well, then if you're saying to me or if the railroad is saying this entire area is controlled by the regulation. Then this picture and all the evidence shows that they violated their own regulations and that's negligence. Judge Sanchez says yes, but you can't bring that action even under the Clarification Act because you're bringing an equity action. You are. You are so right. OK. But Judge Sanchez created that position. Judge Sanchez made that up. Nobody. Nobody argued. Nobody argued that. And let me go back. Well, Mr. Kaplan, I do want to go back because to me, the waiver point here is it's not insignificant. It's something that we're going to have to deal with. You both have spent some time in your brief on it, and so we've got to deal with it. My understanding is, and you tell me if I'm wrong, in the district court you said that 213.33 conferred a clear mandate, a duty on CSX to manage stormwater. And then in this court you've said that 213.33 doesn't even relate to, let alone cover it. Now, those seem to me to be inconsistent positions. And theoretically, you could get to where you want to get, frankly, taking either of those, I think. But my question is, are you foreclosed from taking the one you've taken in front of us because you didn't argue it to the court below? You argued to the court below that there was a clear mandate and that was the operative regulation and it covered this. I argued both. I argued the second that if the regulations cover this, then they violated the regulations. And if they violated the regulations, how do you have a right of action? That's negligence. Because it's preempted. No. No. It's not preempted if the regulations preempt the common law. Right. And they then don't follow their regulations, which is clear here. They almost intentionally didn't do it. That's negligence. It's in our brief. In other words, your assertion is if they don't meet the federal standard of care, that opens it back up. It opens it back up. I don't think there is... That would be an action for damages. Yes. And you are not seeking damages. Well, it's the word damages. Let me come back to where Judge Fisher was for one second. What you have to understand... Well, I can't say that because you understand this, Judge Rendell. You've written other opinions in this area. The clarifying regulations widened plaintiffs' rights. You can't take the clarifying regulations like Judge Sanchez did and say, wait a minute. You're more restricted under the clarifying regulations than you were under the common law before preemption. In my view, we were... There's no preemption here. And therefore, we're entitled to whatever remedy. Now, if you even take Judge Sanchez's argument, all due respect, it doesn't make any sense. So if there's... And what happened here, we gave up our... Really, our claim for a couple of thousand dollars to fix the stones where they had come on our property because it wasn't worth trying... Spending three days trying that or having $20,000 or $30,000 worth of experts. So I gave up that claim. But what I said was, we've got a continuing trespass here. And that's a damage. And under Pennsylvania law, I've cited the case. There's a very good case called Ebert that explains this. And then you've got the Rushing case and you've got the Emerson case where there's an affirmative duty on railroads to clean a ditch. Your Strozik case, Your Honor, you imposed an affirmative duty on the railroad to cut grass. But the cause of action here that's permissible is a cause of action for personal injury or property damage. And you are not asking for property damage. You're asking for an injunction for them to stop and basically remedy a condition. That's not the same as an action for injury, personal injury, death, or property damage. And you're getting that from the clarifying regulations. Right. And what the clarifying... The preemption doctrine, the preemption was in the 1970 Act. There was then a horrible train derailment in North Dakota. You said, we have to let people recover. And the Sixth Circuit screamed out in an opinion and said, please change this. So there was a clarifying regulation. So whatever we had before, and if we had before, the equitable remedy or abate a nuisance, that clarifying regulation did not take that away. No, but... That's the point, Your Honor, the clarifying... We will hear from you on rebuttal. Is that okay? Thank you. Thank you very much. Good afternoon, Your Honor. Good afternoon. Andrew Talbert on behalf of Defendant Appellee CSX Transportation, Inc. In the court below, plaintiff argued that their claims were not preempted, not because 49 CFR 213.33 did not cover the subject matter of their claim, but rather because CSX allegedly violated that regulation, which, if the clarifying amendment applied, would in fact defeat preemption. And it is not, contrary to counsel's representations today, an argument they made only after oral argument. I direct this court's attention to the mall's brief and reply in support of their motion for summary judgment, which can be found at page SA Supplemental Appendix 112. Would it end up in the same place, Mr. Talbert, if you said that it doesn't apply at all, it's not covered, no preemption, or if you said it does apply, but they violated the federal standard and therefore it's not preempted? Certainly there are different ways in which preemption might not attach. One would be if the regulation simply did not cover the subject matter of the claim at all. The other way would be if A, CSX violated the regulation, and B, and this is a critical point coming to Judge Rundell's question at the end of the discussion a moment ago, the claim properly recovered by the 2007 clarifying amendment. Now the 2007 clarifying amendment, in its essence, told the federal courts that preemption does not attach if the railroad violated a federal regulation or a few other things. The only issue here is federal regulation. But of course that amendment is limited to damages actions. But it says, speak to Mr. Kaplan's argument, which has some logical force. That is, it's a clarifying amendment. It wasn't a change in the law. It was an effort by Congress to clarify something, and if anything, to make clear we're not cutting off damages. But equitable remedies existed before. They weren't meant to be taken off the table by the clarifying amendment. What's wrong with the logic of that? I don't think the clarifying amendment was speaking to the scope of injunctions whatsoever. If you look at the other aspects of the FRSA, you will see... I take that as his point. The clarifying amendment wasn't speaking to equitable relief. And so it couldn't be, as Judge Sanchez had it, an enactment which said you will only get relief from a preemption defense if you're talking about the amendment. No, Your Honor. I don't think that the clarifying amendment was specifically addressing injunction, the scope of injunctive remedies, because it didn't need to address that. Because the court decision that it was reacting to, which was the 2008 decision, I believe, of the Eighth Circuit, was a decision that came down not on damages versus injunction, but on violation versus non-violation. And Congress was upset by that decision and issued a clarifying amendment. And if you look at the other provisions of the FRSA that we cite in our brief, and I don't have the exact statutory provisions at my fingertips, you will see that it is only the FRA or state regulatory authorities in certain limited circumstances who can bring injunctive actions at all. So prior to... Are you acknowledging, then, that Judge Sanchez's distinction is without foundation? No. No, Your Honor. Not at all. At least you have to acknowledge that the clarifying amendment didn't limit... I do not think that the clarifying amendment either expanded or contracted the scope of the availability of injunctive remedies. So Judge Sanchez's reasoning was wrong. He got the right result. No, Your Honor. He got the right result. He got the right result in your mind, but his reasoning was wrong. I don't concede that. But if I can explain the point, I think hopefully I'll answer all of these questions in one go. Prior to the clarifying amendment of 2007, one of your sister courts held that a claim was preempted because the subject matter of that claim was covered by a regulation and further held that the mere fact that the railroad had violated that regulation did not change the result and preemption held despite the violation of that regulation. So no remedy. No remedy. Right. No remedy notwithstanding the violation of the regulation. Not the railman stuff. Gotcha. Right. And so Congress comes in and says, that's not what we meant when we enacted the FRSA. We meant for railroads to comply with the regulations and if a railroad has not complied with the regulation, then... And there are damages. And there is a claim for damages, then the claim can proceed. But by specifying that it only applies to damages, that's simply a reflection of... It's not a change in the law. It merely reflects the state of the law at the time that only the FRA and state regulators under limited circumstances could ever seek injunctive relief. So prior to 2007... So your position is that there wasn't ever an opportunity for equitable relief ever. Yes, Your Honor. And what is your basis for that? What is it in the clarifying legislation or in any case that says that was the state of the law before? Your Honor, I honestly did not prep myself on those statutory citations. The statutory citations are in my brief and if you give me a minute, I will find them and we point to statutory citations, not case sites. But the basic principle is that under the FRSA, it is only the Federal Railroad Administration that can enjoin railroads from violations of the regulations. Easterwood seems pretty clear. Easterwood seems to say, to me at least, that we're very cheery about saying there's preemption. And in fact, we think the Federal Railroad Safety Act has an unusual solicitude towards state law. And we're not going to go out there and say there's broad preemption here. We're telling you, you lower courts, watch out for preemption. That's what I understand Easterwood to be saying. So if the language of the statute itself, which the Supreme Court quotes in Easterwood, never says, hey, by the way, we're preempting all equitable remedies, and it doesn't say that. And Easterwood says, be careful about what you say about preemption. What can you look to that takes the common law remedies, including equitable relief, off the table before the clarifying amendment? I would look to 49 U.S.C. section 201.1, sub A, sub 2, which provides that the Secretary of Transportation has exclusive authority to request an injunction for a violation of a Federal Railroad Safety Regulation. Yeah, of a safety... But that is what is at issue. Section 49 CFR section 213.33 is part of the Track Safety Standards. It is a Federal Railroad Administration safety regulation. And that is what has the preemptive force here. And it is only, according to the statute, by its plain text, only the FRA that may seek injunctive remedy. Always was, still is. 2007 amendments just didn't address that. Let's talk about Emerson. It's under a different statute, but it's talking about... I'm sorry, I just lost you. Emerson says, under this Interstate Commerce Commission Termination Act, the railroad took the position, not your client, a different railroad, took the position that they could throw railroad ties in a ditch, and of course the 10th Circuit said, that's crazy, you can't say that that's preempted, or you could park a train engine in the middle of Main Street and say we're disposing of it. How is that different from the position you seem to be taking here, which is, you know what, we can run a sewer pipe onto your property if you want. Your Honor, that is absolutely not our position. What's different from your position if you say, and Mr. Lapsford I think actually did say, as long as it's not our obligation to keep it off and away from the tracks. Where it goes after that is not our problem. So, if it's preempted, isn't the logical end of your argument that if CSX wanted to it could run a culvert onto the empty mall property and just run it straight there? In fact, they would say that's what they tried to do before they stopped. Why isn't that something you're free to do if it's true that there's no remedy? Only the Secretary of Transportation could come in and stop you? Your Honor, several things. First of all, to note, Emerson is not an FRSA case, it's an ICTA case, so it has different analyses for the two acts. The expressed preemption provisions of the two acts are worded differently, and obviously the court looks to the statutory language to see when preemption does or does not attach in a particular instance under a particular statute. As far as whether we could put a sewer line onto the mall's property, I'm not certain that there would necessarily be a private claim that would prevent us from doing it. I'd have to think about it further, but in any case, it would not happen. Because the FRA, understand that our compliance with the Federal Railroad Administration's safety standards is monitored on a regular basis by the FRA. Their inspectors come in. When we slip up and violate, we get cited and we have to correct. It's not as if we're free of all regulation. It's rather that Congress has determined that it is the FRA that is to do the primary regulation in this area, and not private plaintiffs. Its primary concern is with the safety of railroad operations. There's absolutely no doubt that ensuring proper drainage is an absolutely essential aspect of maintaining track stability, which in turn is obviously an essential component of safe railroad operations. That is what Congress has said is the primary objective. That's what the FRA has said is the primary objective. We are doing our utmost to comply with those rules. If that's true, and you failed to meet that standard, your argument is they would have an action for damages. They could come and sue you for that, but they couldn't come and say and while you're at it paying us for the stuff you've done in the past, fix it so it doesn't happen again. They could do one, but not the other. Again, I do not think they have the power to seek an injunction to enforce an FRA regulation, but remember in Emerson, remember the result in Emerson, Your Honor. The result in Emerson was that the claim was not preempted. Your parade of parables really doesn't attach. We think Emerson is entirely consistent with our position, as we explained in our briefs. There, what you had was the throwing of ties and other debris which simply doesn't have anything to do with the natural operation of a railroad. You can dispose of your garbage wherever, and so on our claim is not preempted. Under the court's decision in Emerson, the claim is not preempted. I don't see the concern with our position when we fully embrace Emerson and it does not lead to a preemption. How about the third count, which is for trespass and building the spillway on their property? That was dismissed, Your Honor. That was dismissed? That was wrong. How about continuing trespass for going on the property? Yes, that count remains, Your Honor. What is the question? Is that preempted? Yes, Your Honor. Trespass for going on their property? Remember, there are two trespass claims. There was one that, I forget the exact terminology, but trespass for our employees stepping on their land and trying to remedy it. That's still alive? No, no. They withdrew that in order to come to this court. So the other was the trespass by virtue of the water? That's the continuing trespass. Exactly, Your Honor. And we believe that that claim is plainly preempted by the Federal Railroad Administration's FRSA in conjunction with the two federal drainage regulations. Remember, there's both 49 CFR section 213.33 and 49 CFR section 213 .103C both of which directly address drainage of the tracks, the railroad bed, and the areas adjacent there too. Now, has the FRA come to this property and insisted that you do a better job? Not to my knowledge, but I don't think there's anything in the record one way or the other, Your Honor. Now, they would argue at least in their briefs, they argue we should follow Strzok and find that these state court actions aren't preempted. You argue Rooney, right? Yes, Your Honor. You say that Rooney's more applicable, even though it's a district court decision. More closely analysed. Yes. Isn't Rooney different? How so, Your Honor? Well, you think it's the same. I certainly think it's analogous. I mean, in Strzok, the comparison with Strzok, in Strzok this court held that the regulation governing warning devices covered what it said. Warning devices and not other claims such as vegetation claims or side-of-line claims. And what we say here is that the FRA drainage regulations, which we've cited to this court, say exactly what they mean. They cover drainage. And plaintiff's claims arise from the drainage from beneath and immediately adjacent to our track. If you look at the cross-section of the property at A36 of the record, there isn't anything there other than the tracks and the area immediately adjacent to the track. Any stormwater that flows from our property onto the mall's property necessarily comes from the railroad tracks Let me restate my question on Rooney. Isn't Rooney wrongly decided in light of Strzok? I don't, I really don't think so, Your Honor. I think it was properly decided and I think it should hold. I mean, Strzok is essentially a case that says certain activities are not covered and therefore are not preempted. And one of their arguments here, I'm saying one, I'm giving you a point that they maybe changed arguments somewhere in the midstream. One of their arguments is, alright, we have a regulation case but we also have a negligence and trespass case. And under Strzok, under Strzok, it seems to me that Rooney and the analysis that Rooney made goes further than Strzok would take preemption. Well, Your Honor, I think we can look to the Supreme Court's ruling in Easterwood for guidance. Here, plaintiff in this court at least is arguing that the claim is not preempted because section 213.33 they ignore 213.103c entirely, but they argue that section 213.33 does not prohibit the discharge of stormwater onto their property and therefore does not cover the subject matter of their claim. But that's a non-secular. The mere fact that the regulation does not prohibit the result of the conduct does not mean that the regulation does not cover the subject of that conduct. And so if you look at Easterwood there, the FRA regulation governing the speed at which trains operate does not prohibit collisions with motor vehicles at railroad crossings, but as reflected in the Supreme Court's decision in Easterwood, nevertheless it preempts claims arising from such collisions. Well is that really a very good analogy? Let me I'd like to think so. The 213.33 you've emphasized in your briefing and here again, this is a safety regulation and clearly it would be a safety problem if it was eroding the track or if there was icing on the track or something like that, but it doesn't it doesn't speak at all about what you're to do with the water once you make sure it doesn't affect the safety of the track. Which is why we're not in violation. Or immediately adjacent to the track dealt with which is the language of 213.33 What is it that makes you think that means we're free to direct that onto the mall's property? And that 213.33 substantially subsumes all state law which talks about avoiding improper trespass by water discharge. Your Honor, at first I would take issue with the notion that we directed water anywhere. It ended up there. How it got there is by no means clear. I'm not saying you did that here. I'm following up on yours, but I take it to be your assertion that nobody can touch us except the Secretary. And if we want to direct it onto their property, we're free to do it and they can't say boo about it because the only person who can stop us is the Secretary of Transportation. So taking you at your word, I'm asking you what is it about the language of 213.33 under or immediately adjacent to that makes you think that means we can do whatever we want with the water? Well, in this particular circumstance and obviously we're discussing this case today Your Honor, in this case the property, the railroad property is confined to the tracks and the roadbed immediately adjacent to the tracks. There is nothing other than the tracks the roadbed immediately adjacent to the tracks here. There might well be other situations where I can imagine, for example, a railroad yard where in addition to tracks and all that, you have lots of other outlying properties where water would be flowing into another property and it would not be subject to 213.33 because it's not So this is the Mr. Latchford position where it goes after it's off our track, it's not our issue? Certainly not under the regulation, Your Honor. No. And I direct your attention to what the Mall said below. The Mall said section 213.33 by its own terms. I'm with you, I know what they said below. So I have one last question if my colleagues will indulge me, and it's a practical one. They seem to have taken the position that this all would have gone away for $50,000 a few years ago. You seem like a diligent and capable lawyer and given the letters we've still gotten, even today from you, money's being spent on this. As a practical reason, what's the margin in this for CSX? Why are we here talking? Two things, Your Honor. First, as a factual matter, that $50,000 estimate does not have nearly the weight that plaintiffs point on it. It was your guy's expert. No, no, no. It was an engineer who was called in to see whether we would have to do anything and what possible alternatives there might be. One of the scenarios was one in which a preliminary figure of $50,000 was floated. It's nothing more than that sort of speculation. But to get to the meat of the question, Your Honor, and this, I think, also goes to why plaintiffs' claims are preempted not only by the FRSA but also by IPTA, these sorts of claims go to the heart of railroad operations. A, we must be able to comply with the FRA safety regulations and we strive to do so, ensuring proper drainage of our railroad tracks is necessary for that. And B, if all the other railroads throughout the country, there are six major freight railroads in this country, and to say nothing of Amtrak and the passenger rail service we have here, if railroads were subjected to these sorts of claims, or held liable to this plaintiff, we'd be subject to claims by thousands upon thousands of plaintiffs across the country. And so even if it's not economically reasonable in the light of the hypothesized $50,000 cost in this case, it is of utmost importance to our national rail operations and that's why it's important for us to resist this claim and to insist on the proper interpretation of the preemption provision. But forget liability. You were supposed to maintain and keep free of obstruction to accommodate the expected water flow. Well apparently there's more water flow in the area and there's something wrong with the roadbed or the adjacent area, whether it's the density or the that this is flowing off this property and I guess I'm concerned that the FRA and no one else you know, I mean, who is concerned about doing something about this? By virtue of the fact that it could impact railroad administration across the country, it also impacts people adjacent to railroads if the water just flows off. Your Honor, I mean, FRA is vigilant in its enforcement of Well how long has this been going on? The alleged the alleged flooding problem at the mall commenced in October of 2010 as plaintiff's counsel acknowledges the railroad tracks were built sometime in the 19th century probably around 1880 and the renovation, excuse me, the maintenance work that we conducted in the district court at least they claim caused this was in 2009. So there's a serious causal disconnect between either alleged cause and the alleged problem I don't accept the notion that there's clearly something wrong with our roadbed we had it in operation since 1880 let's say for over 100 years, no problem, we maintained it in I think September of 2009 no problems thereafter and then suddenly in October of 2010 they say, oh, we got flooding. We don't know what the source of the cause is as counsel says, there's a slope down hill, water follows gravity and it's by no means clear to me that there's anything that CSX did that in any way increased the amount of water that the mall is experiencing All of which would be answered by a trial if there were not preemption, right? Well, if there were not preemption and if the plaintiff's claims didn't fail as a matter of state law in any event Right Unless there are further questions your honors? Thank you Your honor, I think the last question you'd ask Mr. Tauber is exactly what's going on here The railroad thinks that they're invincible and that if they litigate every one of these actions it will chill any  to come here. That's what this is all about. There are so many ways to do it Why don't you speak if you would to Mr. Tauber's specific point that this is expressly preempted under the FRSA. You heard him quote the language and he says that's an express preemption of any equitable remedy that was existing in the law before the clarifying amendment it's existing after and that cuts them off. What's your response? That's the first I've ever heard that that there is some existing prohibition against any injunction that common law was abrogated If that's the question you're asking me That's the position they took, is it not? I've never heard it before No. Here's what was said. The same exact thing that Mr. Tauber said The regulations only say this In my brief is the quote from Mr. Young in this courtroom in response to Judge Sanchez, it's short Not to mention 21333 is a drainage regulation Essentially what it says is railroads, you've got to keep the water off the tracks That's that little narrow thing because it's dangerous to have water there because it will deteriorate the tracks. It's exactly what you asked Judge Jordan What is the safety regulation? It's the little area of the tracks. It's not the ballast after it. It's not the ditch It's not the burn He repeated it. The only thing the drainage requirements the intent of it is to keep water away from the tracks. That's it And here's the arrogance It doesn't say you can't put water on your neighbor Sure, hold on I'm just trying to get an answer to a pretty simple question. Maybe I misunderstood Mr. Tauber, but I understood him to say in response to my question, look under the FRSA there's express preemption of any equitable remedy exclusively in the Secretary of Transportation resides the power to seek any kind of injunctive relief and that was the state of the law before the clarifying amendment So that's just the way it is. Now I hear you saying if that's their position you've never heard it before I've never heard it and what does you say? What does Emerson and Rushing and what does Strozic say? It imposes an affirmative obligation to keep things clean. To clean out the ditch. To do the to keep the the grass down and if you don't follow that regulation then it's negligence but here's the practical point they say that we can't have an equitable remedy. So what do we have to do? Keep suing keep suing every time we'll go and we'll patch it and then they'll get a rain and the water will come down and we've got to keep going back and keep going back when Pennsylvania law is clear you've got to control They're basically saying you can't bring them into court. Of course that's what they're saying. That's absolutely right and just think about that just think about that when you were Attorney General and you're sitting there and somebody says to you there's a state law here there's a state law here that we're going to have that's going to take property rights away the legislature's going to enact something that says railroads can't be sued anymore for dumping water on somebody's property that's a violation of the takings clause and what they're saying here is that Congress by enacting that said that with regard to railroads one of the bundle of sticks of property rights has been severed. Well if that were true that's a taking under a whole line of bail. It just this defies logic. That's saying to you that Congress when it enacted that intended to clothe these people with the power to take my property rights away. Unfortunately Mr. Kaplan and I had a case that went up to the Supreme Court and we were affirmed and I was surprised it was a FRSA case involving asbestos and all the workers were suing the railroad because they contracted asbestos and I thought the Supreme Court was going to strike us down and say no preemption and they have upheld the FRSA as regulating these areas so I think it's time to go to Congress. I think you did it in Strosing. I think you did it in Strosing. You said Well it depends on purpose. I mean here there is a valid safety. With regard to the tracks. But you also have safety around because you have switch men that are going to be there and it could be walking around those areas in ice or snow or something like that. The water has to flow so it's related. So the water has to flow where? Alright. I think we've heard all the argument and we appreciate it. I'll take the matter under advisement.